**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| **Barbara Kolkowski,** | **Case No. 1:25-cv-02764-PAB** |
| **Plaintiff,** | |
| **-vs-** | |
| | **JUDGE PAMELA A. BARKER** |
| **Ashtabula Area City School District Board of Education, et al.** | |
| | **MEMORANDUM OPINION & ORDER** |
| **Defendants.** | |

Currently pending before the Court is Plaintiff Barbara Kolkowski's ("Kolkowski") Motion for Preliminary Injunction (the "Motion"). (Doc. Nos. 12, 18.)  Defendants Ashtabula Area City School District Board of Education, Mark Astorino, Dr. Mark Potts, and Lisa Newsome filed an Opposition to the Motion on February 10, 2026, to which Kolkowski replied on February 16, 2026. (Doc. Nos. 16, 19.)  For the following reasons, Kolkowski's Motion is DENIED.[1]

I.      **Factual Background**

Kolkowski is a licensed school counselor employed by the Ashtabula Area City School District.  (Doc. No. 12-1, ¶ 2.)  Beginning in 2012, outside of her counseling duties, Kolkowski was assigned certain administrative duties, which included "master scheduling."  (*Id.* at ¶ 4.)  In 2015, Kolkowski was instructed to begin preparing "Section 504" plans.  (*Id.* at ¶ 5.)

Years later, in April 2021, Kolkowski learned that her job description was revised.  (*Id.* at ¶

---

[1] None of the parties have requested a hearing on Kolkowski's Motion, and the Court finds that a hearing on the Motion is unnecessary because no facts material to the preliminary injunction are in dispute.  *See Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 552–53 (6th Cir. 2007) ("[A] hearing is only required when there are disputed factual issues, and not when the issues are primarily questions of law."); *Conteers LLC v. City of Akron*, No. 5:20-CV-00542, 2021 U.S. Dist. LEXIS 13868, at *30, n.3 (N.D. Ohio Jan. 26, 2021) (Barker, J.); *Sec'y of United States DOL v. Kavelec*, No. 1:19-CV-00968, 2020 U.S. Dist. LEXIS 123274, at *33, n.4 (N.D. Ohio July 14, 2020) (Barker, J.).

10.)  The job description required her to, among other things, prepare Section 504 plans, participate in master scheduling, and assist "in the administration of all federal, state, and board adopted programs and testing requirements."  (Doc. No. 12-4, PageID #216.)  Kolkowski filed a grievance regarding the job description revision in April or May of 2021.  (Doc. No. 12-1, ¶ 11.)  Her grievance was denied on June 11, 2021 by the superintendent because he determined that there had been no violation of the collective bargaining agreement.  (Doc. No. 12-4, PageID #224.)

In addition to the job description grievance, Kolkowski alleges in the Complaint that "[b]eginning in or about 2020, [Kolkowski] pursued a series of grievances challenging the unlawful duties, the secret-job description rewrite, and Defendants' failure to follow mandatory procedures." (Doc. No. 1, ¶ 33.)  At some point these grievances resulted in litigation.  Sometime in 2020 or 2021, Plaintiff filed a lawsuit against the Ashtabula Area City School District and the Ashtabula Area Teachers Association and Ohio Education in the Ashtabula County Court of Common Pleas.  *See Kolkowski v. Ashtabula Area Tchrs. Ass'n*, No. 2021-A-0033, 2022 Ohio App. LEXIS 2945 (Ohio App. 11th Dist. Sept. 6, 2022).[2]  The trial court dismissed that case, which was affirmed by the Ohio Court of Appeals on September 6, 2022.  *See id.*  On January 17, 2023, the Ohio Supreme Court declined to hear an appeal of the Ohio Court of Appeals' decision.  *Kolkowski v. Ashtabula Area Teacher's Ass'n*, No. 2022-1299, 2023 Ohio LEXIS 58, at *1 (Jan. 17, 2023).  On May 30, 2023, the United States Supreme Court denied Kolkowski's petition for writ of certiorari.  *Kolkowski v. Ashtabula Area Teacher's Ass'n*, No. 22-1009, 2023 U.S. LEXIS 2271, at *1 (May 30, 2023).

Then, in September 2023, Kolkowski alleges that "the union purported to resolve Plaintiff's grievances without Plaintiff's assent, without arbitration, and without adjudication of the underlying

---

[2] The parties dispute what the litigation was about, and whether it involves the facts alleged in this lawsuit.  For purposes of this opinion, the Court expresses no view on whether the state court litigation involved the issues alleged in this lawsuit.

2

facts or law." (Doc. No. 1, ¶ 35.)  Kolkowski alleges that "a settlement check was delivered to [her] home," and she "refused the check and her counsel returned it." (*Id.* at ¶ 38.)  Kolkowski alleges that she "and her counsel repeatedly notified Defendants . . . that Plaintiff had rejected the settlement and never exercised dominion or control over the funds." (*Id.* at ¶ 39.)  Kolkowski further alleges that in January 2024 "Treasurer Astorino responded in writing that no adjustment would be made to Plaintiff's 2023 Form W-2," but that he "caused the District to issue and maintain a Form W-2 imputing settlement income to Plaintiff that she had never received." (*Id.* at ¶¶ 41–42.)  Kolkowski filed a grievance regarding the settlement check, which was denied in February 2024. (Doc. No. 12-7, PageID #297.)

Then, nearly two years later, on November 12, 2025, Kolkowski's counsel sent a demand letter to Treasurer Astorino and the Board of Education. (*Id.*)  That letter provides, in relevant part,

> To resolve this administratively and avoid further proceedings, I enclose an Administrative Resolution Agreement providing that the District will:
>
> • Remit the $11,438.00 (less lawful withholdings including STRS payments) on or after January 1, 2026;
>
> • Permit deposit into Mrs. Kolkowski's 403(b) or 457(b) plan if she so elects;
>
> • Issue a corrected 2023 Form W-2C and report properly in tax year 2026;
>
> • Place the funds in escrow within fifteen (15) days of approval;
>
> • Reimburse reasonable accounting fees and any penalties incurred in rectifying the erroneous reporting; and
>
> • Affirm a non-retaliation commitment regarding supplemental assignments and employment treatment.
>
> Given that the statute of limitations for Mrs. Kolkowski's federal retaliation claim under 42 U.S.C. 1983 is two years, I am enclosing a draft complaint that will be filed in the United States District Court for the Northern District of Ohio, Eastern Division, before the end of this calendar year if the District does not act promptly

3

to correct and resolve this matter. This filing will be made solely to preserve Mrs. Kolkowski's rights and prevent any tolling of the statute of limitations, while still allowing the District an opportunity to resolve the matter administratively.[3]

(Doc. No. 12–7, PageID #297–98.)

This civil action followed.

## II.    Procedural Background

On December 12, 2025, Plaintiff filed her complaint raising three claims for relief: (1) Procedural Due Process under 42 U.S.C. § 1983; (2) Retaliation under 42 U.S.C. § 1983; and (3) Municipal liability under *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978). (Doc. No. 1.) Over a month later, on January 27, 2026, Kolkowski filed her Motion for Preliminary Injunction. (Doc. No. 12.) Therein, Kolkowski requests that the Court enter an injunction: (1) enjoining defendants "from expanding, newly enforcing, or continuing enforcement of disputed job duties that are administrative, clerical, operational, or compliance-management in nature, pending final adjudication of the merits of this action," which includes "administrative or non-counseling functions that Plaintiff identified in writing as conflicting with Ohio law, State Board standards, or District-adopted counseling policies, including but not limited to master scheduling, routine grade monitoring or enforcement, preparation or drafting of Section 504 plans, testing coordination, data or compliance reporting, and similar non-counseling tasks, regardless of whether such duties were historically assigned or previously performed," (2) enjoining Defendants "from taking adverse employment actions against Plaintiff based on her refusal to perform disputed job duties, including continued enforcement of such duties following notice of Plaintiff's objections, pending resolution of this action on the merits," and (3)

---

[3] Kolkowski's counsel expressly disclaimed that this letter was protected by Fed. R. Evid. 408 (Doc. No. 12–7, PageID #298) ("This correspondence is an administrative compliance notice, not a settlement negotiation under F.R.E. 408. It may therefore be used to demonstrate notice and intent should enforcement be required").)

4

enjoining Defendants from "issuing future payroll, employment, or classification records that treat performance of disputed job duties as required conditions of Plaintiff's employment, pending resolution of whether such duties may lawfully be assigned." (*Id.* at PageID #178–79.)

On February 10, 2026, Defendants filed their Opposition to Kolkowski's Motion for Preliminary Injunction. (Doc. No. 16.) Then, on February 16, 2026, Kolkowski filed her Reply and a "Filing of Revised Proposed Order." (Doc. Nos. 17, 18.) According to Kolkowski, the revised proposed order "clarifies the scope of the requested relief." (Doc. No. 18, PageID #384.) The revised proposed order limits the requested injunction to the following:

1. During the pendency of this action, Defendants, their officers, agents, employees, and all persons acting in concert with them are ENJOINED from disciplining, penalizing, evaluating adversely, or otherwise taking adverse employment action against Plaintiff arising from her performance of licensed school counseling duties, or from any alleged deficiency in master scheduling or state testing coordination that results from Plaintiff's prioritization of student counseling duties when competing administrative duties cannot reasonably be completed simultaneously.

2. Nothing in this Order prohibits Defendants from assigning administrative duties to Plaintiff. This Order does not require redistribution of duties, additional staffing, or structural changes within the District.

3. This Order is prohibitory in nature and preserves the status quo pending resolution of the merits. The Court retains jurisdiction to enforce this Order.

(Doc. No. 18-1, PageID #386–87.)

## III. Standard of Review

When considering a motion for preliminary injunction, the Court must consider four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without an injunction; (3) whether issuance of an injunction would cause substantial harm to others; and (4) whether the public interest would be served by the

injunction. *See National Credit Union Administration Board v. Jurcevic*, 867 F.3d 616, 622 (6th Cir. 2017); *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007).

Although the Sixth Circuit has historically instructed district courts that these factors are "not prerequisites that must be met," *In re Delorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985), the Sixth Circuit has held that a lack of irreparable harm is fatal to a request for a preliminary injunction. *D.T. v. Sumner Cty. Sch.*, 942 F.3d 324, 327–28 (6th Cir. 2019). As explained by the *D.T.* court, "this factor *is* dispositive; a plaintiff *must* present the existence of an irreparable injury to get a preliminary injunction." *Id.* at 327. "Thus, a district court is 'well within its province' when it denies a preliminary injunction based solely on the lack of an irreparable injury." *Id.* (quoting *S. Milk Sales, Inc. v. Martin*, 924 F.2d 98, 103 (6th Cir. 1991)).

## IV.   Analysis

Because the irreparable harm factor is dispositive, the Court begins its analysis with that factor. In her Motion, Kolkowski makes several arguments as to why she faces irreparable harm. First, she argues, without citation, that "Defendants' continued enforcement of duties outside Plaintiff's licensed scope places her in an untenable position: either comply with assignments that conflict with licensure requirements or risk discipline and adverse professional consequences." (Doc. No. 12, PageID #174.) She asserts that "Plaintiff's irreparable harm arose not from the historical existence of certain duties, but from Defendants' continued enforcement of those duties after Plaintiff objected and sought neutral clarification, thereby compelling compliance under threat of professional discipline." (*Id.*) According to Kolkowski, "[t]he continued enforcement of duties outside Plaintiff's licensed scope creates an ongoing and present risk to her professional standing and career." (*Id.*)

6

Second, she argues that she "suffers irreparable harm through the ongoing displacement of counseling services during critical periods of the academic year" because "[d]uring the beginning and end of the school year, Plaintiff is required to devote substantial portions of her workday to administrative and clerical tasks, reducing or eliminating her availability to provide counseling services to students when needs arise." (*Id.*)  Third, she argues that she "faces irreparable harm to her constitutional rights" because "Defendants' continued enforcement of the challenged practices following Plaintiff's objections and grievances therefore inflicts ongoing constitutional harm that cannot be remedied through post-hoc relief." (*Id.*)  Finally, she argues that "the record reflects continued enforcement conduct following Plaintiff's objections and rejection of settlement payment . . . underscoring that the harm is ongoing and not moot." (*Id.* at PageID #175.)

In their Opposition, Defendants only respond to Kolkowski's final argument.  They argue that "[t]he history of Plaintiff's claims against Defendants . . . clearly establishes that Plaintiff's alleged injury is not 'imminent' and there is no basis for affording Plaintiff relief now.  (Doc. No. 16, PageID #370.)  According to Defendants, "[t]he issues Plaintiff complains about, including payment for 195 days instead of 205 days, job descriptions issues, and performance of administrative functions, were all known to Plaintiff and could have been included in her Ashtabula County Litigation suit filed in State Court back in January of 2021." (*Id.*)  Defendants assert that "Plaintiff did not seek a preliminary injunction in June of 2021 when she filed her First Amended Complaint and outlined the very same issues with payment and job duties alleged in the instant case." (*Id.*)  They argue that if "the matter was truly 'imminent' to Plaintiff, the request for Preliminary Injunction should have been brought at that time." (*Id.*)

In her Reply, Kolkowski argues, without citation, that "[t]he relevant question is not when

7

Plaintiff first objected to administrative assignments" and, instead, that "[t]he question is whether the challenged structure continues to be enforced and will continue to displace licensed counseling functions absent relief."  (Doc. No. 19, PageID #397.)  According to Kolkowski, the harm "is presently occurring and will recur during the remaining months of the current academic year."  (*Id.* at PageID #398.)  She asserts that "[w]hen approximately half or more of a counselor's professional work time during defined months is consumed by administrative coordination duties for extended periods, the resulting loss of direct student services and developmental programming cannot later be recreated through damages."  (*Id.*)  Kolkowski asserts that "the District continues to enforce the challenged structure without revisiting or substantively resolving [her] compliance concerns" and that "continuing enforcement of an operative job description creates renewed injury with each academic cycle."  (*Id.* at PageID #389–99.)

Based on the parties' briefing, Kolkowski's arguments concerning irreparable harm can be summed up into three categories: (1) Kolkowski is "under threat of professional discipline," (2) Kolkowski "suffers irreparable harm through the ongoing displacement of counseling services during critical periods of the academic year," and (3) Kolkowski "faces irreparable harm to her constitutional rights."  As explained below, the Court rejects all three arguments.

**A.      Kolkowski has not met her burden to show that she is under imminent threat of professional discipline**

Kolkowski's argument that she could face professional discipline is based solely on speculation and conjecture.  Kolkowski has not pointed the Court to any evidence that she could face discipline if she does the tasks at issue.  Nor has she cited any Ohio authority for the proposition that the disputed tasks are illegal or that she could face any risk to her license if she complies with the disputed tasks.

8

Kolkowski does point the Court to O.R.C. §§ 3319.113 and 3319.16 for the proposition that "[t]hese statutory provisions reinforce that counselor assignments implicating licensure and professional standards are not discretionary matters of internal management, but are subject to state-law constraints and procedural safeguards." (Doc. No. 12, PageID #167.)  Those statutes, however, do not establish that she is at risk of professional discipline.

First, O.R.C. § 3319.16 provides the procedure for when a teacher's contract can be terminated.  That statute provides that "[t]he contract of any teacher employed by the board of education of any city, exempted village, local, county, or joint vocational school district may not be terminated except for good and just cause."  *Id.*  The statute also provides certain procedural safeguards to a teacher before she can be terminated.  *Id.*  There is nothing in this statute delineating what a guidance counselor can and cannot do on the job, or when a guidance counselor is subject to discipline.  Further, Kolkowski has not submitted any evidence that she could be terminated "for good and just cause" by complying with disputed tasks.

O.R.C. § 3319.113 likewise does not help Kolkowski.  Under O.R.C. § 3319.113(A), "[t]he state board of education shall develop a standards-based state framework *for the evaluation of school counselors*."  (emphasis added).  Those standards are to, among other things, be "aligned with the standards for school counselors adopted under section 3319.61 of the Revised Code and requires school counselors to demonstrate their ability in all the areas identified by those standards."  O.R.C. § 3319.61(A)(7), in turn, provides that the board of education shall:

> Develop standards for school counselors that reflect what school counselors *are expected to know and be able to do at all stages of their careers*. The standards shall reflect knowledge of academic, personal, and social counseling for students and effective principles to implement an effective school counseling program. The standards also shall reflect Ohio-specific knowledge of career counseling for

9

students and education options that provide flexibility for earning credit, such as earning units of high school credit using the methods adopted by the department of education and workforce under division (J) of section 3313.603 of the Revised Code and earning college credit through the college credit plus program established under Chapter 3365 of the Revised Code and the career-technical education credit transfer criteria, policies, and procedures established under section 3333.162 of the Revised Code. ***The standards shall align with the American school counselor association's professional standards*** and the operating standards developed under division (D)(3) of section 3301.07 of the Revised Code.

(emphasis added).  "[E]ach school district board of education shall adopt a standards-based school counselor evaluation policy that conforms with the framework for the evaluation of school counselors."  O.R.C. § 3319.113(C)(1).

Those standards, however, are not binding rules of conduct.  The Ohio Revised Code provides that the standards are "for the *evaluation* of school counselors" and that they are what "school counselors *are expected to know* and *be able to do* at all stages of their careers."  O.R.C. § 3319.113(A) (emphasis added); O.R.C. § 3319.61(A)(7) (emphasis added).  And while O.R.C. § 3319.61(A)(7) provides that the standards "shall align with the American school counselor association's professional standards," the statute does not make the ASCA's professional standards binding on Ohio guidance counselors.  Applying the plain text of these statutes, Ohio's guidance counselor standards are merely evaluation tools and tools for "implement[ing] an effective school counseling program."  The standards themselves, which Kolkowski attached to her Motion, provide that they serve as: (1) "An overview of the expectations of knowledge and practices of effective school counselors," and (2) "A tool for school counselors' self-assessment and professional learning." (Doc. No. 12-3, PageID #194.)[4]

---

[4] This statutory framework is further explained by a treatise on Ohio school law:

10

Accordingly, neither O.R.C. § 3319.113 nor O.R.C. § 3319.16 establish that Kolkowski is facing any risk of professional discipline by *complying* with the disputed tasks. Based on the record before the Court, it seems the only way Kolkowski could be disciplined is if she *does not comply* with the very tasks that she wants the Court to enjoin.[5] But Kolkowski has not cited any authority explaining why doing the tasks would be illegal or put her at risk of professional discipline. Facing professional discipline by not doing your assigned job duties is different than facing professional discipline for being forced to do illegal job duties. Based on the record before the Court, this case involves the former situation, and not the latter. Put simply, Kolkowski has not established that *complying* with the disputed tasks would likely result in professional discipline. Without more, the

---

Boards of education now have the option to evaluate teachers pursuant to the "framework" established at the state level by the State Board of Education, acting pursuant to a legislative mandate, or to develop their own framework in consultation with teachers

\* \* \*

Parallel provisions of the Revised Code require the State Board to develop a "standards-based state framework" for the evaluation of one particular subset of "teachers"—namely, school counselors. These requirements [have] not changed. These framework[s] required by these provisions must require counselors to demonstrate their ability to produce positive student outcomes using metrics, including those from the school's report card, when appropriate, and be aligned with the standards for school counselors adopted by the Educator Standards Board. Under the framework, all counselors must be evaluated annually, except as otherwise appropriate for high-performing school counselors, by evaluators meeting established requirements, and must receive a written evaluation report. A board may, however, elect not to evaluate a school counselor who has been on leave for 50% or more of the school year, or who has submitted a written notice of retirement which the board has accepted no later than December 1. As with regular classroom teachers, counselors must ultimately be assigned one of four ratings: (1) accomplished, (2) skilled, (3) developing, or (4) ineffective. Each board of education is required to adopt a standards-based counselor evaluation policy that conforms to the state framework. The policy must include procedures for using evaluation results for decisions regarding the retention and promotion of school counselors, as well as the removal of poorly performing school counselors. As in the case of the "regular" teacher evaluation requirements, the law governing the evaluation of school counselors prevails over any conflicting provisions of a collective bargaining agreement.

1 Ohio School Law Guide § 7.80.1 (citations omitted).

[5] The Court notes that Kolkowski submitted an evaluation dated April 19, 2024. After being evaluated under Ohio's guidance counselor standards, Kolkowski was rated as "skilled," which is the second highest rating Kolkowski could receive. (Doc. No. 12-6, PageID 280–92.)

11

Court will not enjoin an employer from requiring its employee to do her job as assigned.

Moreover, Kolkowski's alleged fear of discipline is undermined by her delay in bringing this lawsuit.  "To merit a preliminary injunction, an injury 'must be both certain and immediate,' not 'speculative or theoretical.'"  *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 392 (6th Cir. 2020) (quoting *D.T.*, 942 F.3d at 327–27).   Thus, "unreasonable delay undercuts irreparable injury."  *Churchill Downs Tech. Initiatives Co. v. Mich. Gaming Control Bd.*, 162 F.4th 631, 642 (6th Cir. 2025) (citing *Huron Mountain Club v. U.S. Army Corps of Eng'rs*, 545 F. App'x 390, 397 (6th Cir. 2013)).  In *Huron Mountain Club*, for example, the Sixth Circuit found that the district court "did not err by considering [plaintiff's] delay in filing this federal action as a factor weighing against injunctive relief."  *Huron Mountain Club*, 545 F. App'x at 397.  In that case, the plaintiff waited six years after contesting the defendant's conduct at a state regulatory agency to file its request for injunctive relief in federal court.  *Id.*

Here, Kolkowski waited nearly five years to file her federal case and then waited another month before moving for injunctive relief.  By her own admission, she has been aware of the job description since April 2021 (Doc. No. 12-1, ¶ 11), and even worse, Kolkowski has being preparing Section 504 plans and has been responsible for master scheduling (both of which she contends put her at risk for discipline) for over a decade.[6]  (*Id.* at ¶¶ 4–5.)  Further, the record does not reflect that this case was even filed to prevent any supposed threats of discipline.  In Kolkowski's November 12, 2025, demand letter, there is no mention of the supposed threats of professional discipline, or even any mention of the disputed tasks.  If Kolkowski truly was concerned about threats of discipline, she

---

[6] Kolkowski implicitly concedes as much in her briefing.  She asserts that she "performed certain duties earlier in her employment without knowledge that they conflicted with binding licensure requirements . . . ."  (Doc. No. 12, PageID #167.)

12

would have raised that issue to Defendants in the demand letter.  Instead, her chief concern in that letter was the 2023 settlement payment.

Kolkowski has been doing the disputed tasks for over a decade, and she has been aware of the disputed job description for half a decade.  Kolkowski has not submitted any evidence or authority establishing that she has been, or ever will be, subjected to discipline if she complies with the disputed job description.  For these reasons, coupled with her unreasonable delay in moving for injunction relief, the Court finds that Kolkowski has not met her burden to establish irreparable harm based on her speculative assertions of professional discipline.  *See Walls v. Sanders*, 733 F.Supp.3d 721, 741 (E.D. Ark. 2024) (denying teachers' request for injunctive relief based upon, among other things, a thirteen-month delaying in filing the lawsuit and there being "no evidence in [the] record that suggests any of the Teacher Plaintiffs face[d] an imminent threat of discipline by any of the Defendants"), *rev'd on other grounds sub nom Walls ex rel. Reynolds v. Sanders*, 144 F.4th 995 (8th Cir. 2025).

 **B.** **Kolkowski has not met her burden to show that she is facing irreparable harm based on ongoing displacement of counseling services during critical periods of the academic year**

The Court likewise finds that Kolkowski has not met her burden to establish irreparable harm based on "ongoing displacement of counseling services during critical periods of the academic year." Kolkowski's argument appears to be that by having to do the disputed tasks, her students lose access to her in her capacity as a guidance counselor.  The problem with Kolkowski's argument is that even if she does have less time to work on "counseling services," she is not harmed.  Even if students will lose access to her guidance counseling services, the *students* would be harmed.  A "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interest of third parties."  *Smith v. Jefferson County Bd. of Sch. Comm'rs*, 641 F.3d 197, 206 (6th Cir.

2017) (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 474 (1982)). Furthermore, Kolkowski has not cited any authority explaining how "displacement of counseling services" results in irreparable harm. Accordingly, Kolkowski cannot establish irreparable harm based on the "ongoing displacement of counseling services during critical periods of the academic year."

C. **Kolkowski has not met her burden to show that she is facing irreparable harm to her constitutional rights**

The Court also finds that Kolkowski has not established that she is facing irreparable harm to her constitutional rights. Kolkowski relies on *Elrod v. Burns*, 427 U.S. 347, 373 (1976) for the proposition that "[t]he loss or chilling of First Amendment freedoms, even for minimal periods of time, constitutes irreparable injury as a matter of law" and that "Defendants' continued enforcement of the challenged practices following Plaintiff's objections and grievances therefore inflicts ongoing constitutional harm that cannot be remedied through post-hoc relief." It is true that the Supreme Court in *Elrod* found that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," but that situation is not present here. Kolkowski is not alleging, and there is no evidence establishing, that Defendants are preventing her from exercising her First Amendment freedoms based on her having to comply with disputed tasks. Indeed, Kolkowski's requested injunction does not enjoin Defendants from taking any action that would interfere with her First Amendment freedoms. Simply put, there is nothing in the record establishing that an injunction would prevent Kolkowski from losing her First Amendment freedoms.[7]

---

[7] And to the extent Kolkowski is relying on another (but not identified) constitutional right, she has not met her burden to establish which right is implicated by the job description at issue. Given that Kolkowski holds the burden of establishing irreparable harm, the Court will not presume which right Kolkowski believes is being infringed here. *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) ("The trial and appellate courts should not have to guess at the nature of the claim asserted"); *Kelly v. Callahan*, No. 23-4022 (MAS) (JBD), 2024 U.S. Dist. LEXIS 59938, at *6 (D.N.J. Apr.

For all these reasons, the Court finds that Kolkowski has not established irreparable harm. The Court, accordingly, denies Kolkowski's Motion.

### D.        A final note for Kolkowski

The Court takes a moment to express one final note for Kolkowski.  Kolkowski's brief in support of her Motion exceeds the page limitations imposed by the Court's Local Rules by seven pages.  *See* Local Rule 7.2(f).  The Court exercises its discretion in not striking her brief because Defendants have not objected to its length.  As a member of the bar of this Court, Kolkowski's counsel is reminded that he has a duty to review and comply with the Local Rules.  Kolkowski and her counsel are expressly warned that the Court's Local Rules will be strictly enforced going forward.

## V.        Conclusion

For the reasons set forth herein, Kolkowski's Motion for Preliminary Injunction (Doc. Nos. 12, 18) is DENIED.

**IT IS SO ORDERED.**

 _s/Pamela A. Barker_____
PAMELA A. BARKER
Date:  March 3, 2026                                      U. S. DISTRICT JUDGE

---

1, 2024) ("The Court will not guess what interests Plaintiff seeks to vindicate . . ."); *Butz v. Clayton*, No. 2:15-CV-12232, 2016 U.S. Dist. LEXIS 58772, at *8 (E.D. Mich. Apr. 7, 2016) ("Plaintiff fails to describe the law upon which his claims are based, no specific constitutional right has been identified, and it is not incumbent upon this Court to guess what it might be").