**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

**Barbara Kolkowski,**

**Plaintiff,**

**-vs-**

**Ashtabula Area City School District Board of Education, et al.**

**Defendants.**

**Case No. 1:25-cv-02764-PAB**

**JUDGE PAMELA A. BARKER**

**MEMORANDUM OPINION & ORDER**

Currently pending before the Court is Defendants' Ashtabula Area City School District Board of Education ("District" or "Board"), Mark Astorino ("Astorino"), Dr. Mark Potts ("Potts"), and Lisa Newsome's ("Newsome") (together, "Defendants") Motion to Dismiss. On January 30, 2026, Plaintiff Barbara Kolkowski ("Plaintiff" or "Kolkowski") filed her Opposition to the Motion to Dismiss, and February 13, 2026, Defendants filed their Reply in support of their Motion to Dismiss. (Doc Nos. 15, 17.) Also pending before the Court is Defendants' Motion to Strike. (Doc. No. 22.) On June 18, 2026, Kolkowski filed her Opposition to the Motion to Strike. (Doc. No. 24.) Defendants did not file a Reply. Finally, pending before the Court is Kolkowski's Motion for Leave to File First Amended Complaint (the "Motion for Leave"). (Doc. No. 23.) On July 1, 2026, Defendants filed their Opposition to the Motion for Leave, to which Kolkowski replied on July 6, 2026. (Doc. Nos. 26, 27.)

For the reasons stated herein, the Motion for Leave (Doc. No. 23) is GRANTED. The First Amended Complaint (the "FAC") (Doc. No. 23-1) is deemed filed as the date of this opinion. Defendants shall file their answer no later than September 9, 2026. Defendant Potts is hereby

dismissed with prejudice. The Motion to Dismiss (Doc. No. 11) is DENIED as moot. The Motion to Strike (Doc. No. 22) is DENIED.

## I. Allegations in the Proposed First Amended Complaint

Kolkowski is a licensed Ohio school counselor employed by the District. (Doc. No. 23-1, ¶ 12.) She holds a state-issued professional school-counselor license and continuing-contract rights under Ohio law. (*Id.* at ¶ 13.)

The District is a public school district and municipal entity. (*Id.* at ¶ 14.) Astorino "is the District's Treasurer and a final policymaker with respect to payroll administration, tax reporting, and implementation of compensation and settlement related decisions" and participated in District-level responses concerning job description procedures, grievance handling, public-records responses, and compliance with District administrative guidelines." (*Id.* at ¶ 15.) Former Superintendent Dr. Mark Potts "served as Superintendent of the District during the period in which Plaintiff's job description was revised in December 2020 and adopted by the Board in May 2021, and he exercised policymaking authority with respect to job descriptions, assignment of duties, and grievance administration." (*Id.* at ¶ 16.) Newsome "became Superintendent in 2023 after the events surrounding the December 2020 job-description rewrite and is alleged to have participated in 2023 grievance handling, reliance on a purported grievance resolution, settlement-related actions, public records handling, and continued enforcement and ratification of the challenged structure, including its implementation through District administrators during the 2023-2024, 2024-2025, and 2025-2026 school years." (*Id.* at ¶ 17.)

### A. Defendants require Kolkowski to work on tasks unrelated to her role as a counselor

"From at least 2015 through June 2026, Plaintiff was required to work substantial additional

hours each year—ranging from approximately 160 to 290 hours annually—in order to perform administrative duties unrelated to her licensed counseling role." (*Id.* at ¶ 25.) "These excess duties far exceeded any limited allowance for additional work and reflected a longstanding District custom known to supervisors and administrators." (*Id.* at ¶ 26.) "At all relevant times, other guidance counselors employed by the District under the same or substantially similar job descriptions were not required to perform the full range or volume of administrative and quasi-administrative duties imposed on Plaintiff." (*Id.* at ¶ 27.) Kolkowski "was singled out to perform a significant amount of administrative work not required of her peers." (*Id.*)

Kolkowski alleges that Defendants did not "disclose, adopt, or apply any written policy or standard tying assignment of administrative duties to counselor caseload, nor was Plaintiff provided notice of or an opportunity to contest any such rationale." (*Id.* at ¶ 28.) "During the same period in which Plaintiff objected to the challenged administrative assignments, District administrators did not uniformly require guidance counselors to perform administrative and quasi-administrative tasks." (*Id.* at ¶ 29.) Kolkowski alleges that "Defendants imposed a materially greater administrative burden on Plaintiff and did not correct the disparity." (*Id.*) As an example, Kolkowski alleges that "[c]ertain counselors were permitted to decline or were not required to perform duties such as preparation of Section 504 plans, testing administration, and master scheduling, and were not required to absorb the duties of departing counselors." (*Id.*)

**B. Defendants rewrite Kolkowski's job description**

Kolkowski "objected to the challenged administrative assignments through the grievance process." (*Id.* at ¶ 31.) Thereafter, "District officials under then-Superintendent Potts initiated a rewrite of Plaintiff's job description that added or expanded language concerning master scheduling,

testing, Section 504 plans, and other duties Plaintiff had challenged." (*Id.*) "The revised job description was drafted and approved through the District's administrative process in or about December 2020, with then-Superintendent Potts involved in the approval and Treasurer Astorino included on related communications." (*Id.* at ¶ 32.)

"On May 27, 2021, the Board approved a revised School Counselor 7–12 job description governing Plaintiff's position." (*Id.* at ¶ 33.) "That structure remained operative after December 22, 2023 and governed Plaintiff's assignments during the spring of 2024, and in the 2024-2025, and 2025-2026 academic years." (*Id.* at ¶ 34.)

"The revised job description stated that a counselor 'participates in and provides input for the school master schedule' and 'assists in the administration' of federal, state, and Board adopted testing programs and testing requirements." (*Id.* at ¶ 35.) "It also referred to writing Section 504 plans and communicating necessary accommodations to staff members." (*Id.*) "The duties later directed to Plaintiff went materially beyond the limited participation, input, and assistance described in the revised job description and required her to perform building wide operational, coordination, and management functions." (*Id.* at ¶ 36.)[1]

"District policy governing job descriptions required that revised job descriptions be reviewed with the employee by the immediate supervisor, that employees be provided access to revisions, and that job descriptions serve as the governing basis for evaluation and assignment of duties." (*Id.* at ¶ 53.) "District Administrative Guideline 3120.01 required that, after reviewing the job description,

---

[1] The revised job description also changed the counselor salary status from 205 days to 185 days. (*Id.* at ¶¶ 65–66.) Kolkowski goes into great detail about this change (*Id.* at ¶¶ 64–80), but the Court will not recite these facts herein as they are not relevant to the Court's analysis today. (*See id.* at ¶ 68 ("Plaintiff does not allege that the District failed to pay her for 205 days after the commencement of the 2023-2024 school year and does not seek post-December 22, 2023 damages for a failure to provide 205-day compensation").)

the professional staff member sign and date one copy of the job description indicating receipt and an opportunity to discuss the duties with the immediate supervisor, and that the signed copy be included in the personnel file." (*Id.* at ¶ 54.) "Defendants did not review the revised job description with Plaintiff, did not provide her notice of the revision before implementation, and did not obtain her acknowledgment or sign off, in violation of mandatory District policy." (*Id.* at ¶ 55.)

**C. Kolkowski discovers revised job description in April 2021**

Kolkowski "discovered the revised job description only inadvertently in or about April 2021." (*Id.* at ¶ 56.) Kolkowski further alleges that "Defendants' secret alteration and continuing enforcement of governing rules, combined with their failure to follow mandatory District procedures, deprived Plaintiff of notice and a meaningful opportunity to be heard." (*Id.* at ¶ 60.)

"District leadership later acknowledged that Plaintiff's job description should be reviewed with her, yet Defendants never conducted the required review and have never obtained Plaintiff's acknowledgment." (*Id.* at ¶ 57.) "On June 11, 2021, former Superintendent Potts stated in writing that all counselors then employed by the Board would have an opportunity to review and comment on their job descriptions and that he would review the teams to which Plaintiff was assigned and remove her from those teams when appropriate." (*Id.* at ¶ 58.) "Despite that representation, the revised job description was never reviewed with Plaintiff and no signed acknowledgment was obtained." (*Id.*)

"The District had actual notice before and during the May 2021 adoption that the job description safeguard was not being followed." (*Id.* at ¶ 61.) "In September 2020, after a public-records request sought signed and dated job descriptions in bargaining-unit personnel files, Astorino asked Human Resources whether the practice was not to sign job descriptions, and Human Resources

responded that it had not had anyone sign their job description." (*Id.*) "On May 27, 2021 . . . Astorino again raised the issue internally and stated that the District's continued failure to follow Board policies regarding job descriptions continued to haunt the District." (*Id.* at ¶ 62.) Kolkowski alleges that "[t]hose communications confirm that District policymakers contemporaneously knew employee/supervisor approval had not been completed through the policy-mandated process, yet Defendants implemented and enforced the revised structure anyway." (*Id.* at ¶ 63.)

### D. The revised job description places a burden on Kolkowski

"During defined academic cycles, including March through June and August, those administrative functions consumed a significant portion of Plaintiff's professional time and materially diverted her from direct counseling services." (*Id.* at ¶ 37.) "During recurring annual cycles, Plaintiff devoted approximately fifty percent of her work time to master scheduling, state-testing coordination, and related administrative duties in March; approximately sixty-five percent in April and May; approximately seventy-five percent in June, including the two additional contracted weeks; and approximately fifty percent in August." (*Id.* at ¶ 41.) "These responsibilities required concentrated planning, coordination, administrative oversight, and building-level management and recurred during each academic year." (*Id.*)

Kolkowski alleges that "Principal Anservitz acknowledged that he did not know how one person could accomplish all of the listed activities within the available time and indicated that the revised job description had not been communicated to him or to the other counselors." (*Id.* at ¶ 59.) Kolkowski alleges that "[t]hose statements placed District supervisory personnel on notice of both the workload problem and the absence of an effective review and implementation process." (*Id.*)

**E. Defendants issue new directions concerning Kolkowski's job in 2024 and 2025**

Kolkowski alleges that "[t]he post-cutoff[2] enforcement was carried out through new directions by District administrators implementing the Board-approved job structure during successive academic cycles." (*Id.* at ¶ 38.) "From approximately March through June 2024, Scott Anservitz, then the Junior High School Principal, directed Plaintiff to handle the Junior High School master schedule and testing coordination." (*Id.* at ¶ 42.)

"In or about August 2024 and again from approximately March through June 2025, John Pinto, the Junior High School Principal, directed Plaintiff to handle the Junior High School master schedule and testing coordination." (*Id.* at ¶ 43.) "In or about August 2025 and again from approximately March through June 2026, Pinto again directed Plaintiff to handle the Junior High School master schedule and testing coordination." (*Id.* at ¶ 44.)

"In spring 2024 and during the 2024-2025 school year, Julie Fulton, the District's Special Education Director, directed Plaintiff to write and coordinate Section 504 plans for the Junior High School." (*Id.* at ¶ 45.) "In fall 2025, Christine Gulley directed Plaintiff to collect information and data from teachers and to handle scheduling for Junior High School Section 504 plans until Gulley was injured in an automobile accident." (*Id.* at ¶ 46.) "After Gulley's injury, Assistant Principal Alyssa Giegerich assumed management and coordination of the Junior High School Section 504 plans. The reassignment of those responsibilities to an assistant principal further demonstrated their administrative and management character." (*Id.* at ¶ 47.)

[2] Kolkowski alleges that she "seeks damages under 42 U.S.C. § 1983 only for deprivations occurring on or after December 22, 2023." (*Id.* at ¶ 4.) She further alleges that "[e]arlier events are alleged as background and as evidence of notice, motive, policy, custom, practice, ratification, concealment, delayed discovery, and the context for the post-cutoff deprivations." (*Id.*) She "challenges affirmative post-cutoff implementation and enforcement decisions, including the continued assignment, scheduling, evaluation, and enforcement of the challenged administrative duties, the 2024 tax-reporting conduct concerning the disputed Form W-2, the renewed payment attempts in December 2025, and post-cutoff concealment and retaliatory conduct." (*Id.*)

"The directions by Anservitz, Pinto, Fulton, and Gulley were affirmative post-cutoff implementation decisions, not merely the continuing consequences of the 2020-2021 job description process. They required Plaintiff to perform the challenged duties anew during each identified academic cycle." (*Id.* at ¶ 48.) "These recurring assignments were made by District administrators acting within the scope of their employment and implementing the Board-approved structure that the District and Superintendent Newsome continued to enforce and ratify after Plaintiff's objections and rejection of the purported settlement." (*Id.* at ¶ 49.)

**F. Kolkowski is injured by her new job responsibilities**

Kolkowski alleges that "[t]he displacement of Plaintiff's licensed counseling functions injured Plaintiff personally because she was evaluated, judged, and professionally classified as a school counselor while Defendants simultaneously diverted substantial portions of her work time to non-counseling administrative duties." (*Id.* at ¶ 50.) "This impaired Plaintiff's ability to perform the licensed functions on which her evaluation, professional standing, continuing-contract employment, and counselor role were based." (*Id.*) "Defendants placed Plaintiff in the position of being responsible for counselor outcomes while denying her sufficient professional time to perform counselor functions during the very academic cycles in which counseling services, student scheduling, and student support needs were most time-sensitive." (*Id.* at ¶ 51.)

"During the 2023-2024 school year, Plaintiff was evaluated under Ohio's school-counselor standards and received an overall rating of Accomplished in an evaluation signed by Principal Scott Anservitz." (*Id.* at ¶ 52.) "During the 2024-2025 school year, Plaintiff received an overall rating of Skilled." (*Id.*) "The District evaluated Plaintiff as a professional school counselor while also treating master-scheduling, Section 504-plan, and related administrative work as evidence relevant to her

counselor performance." (*Id.*)

### G. Kolkowski pursues public records requests from Defendants

"Plaintiff submitted public-records requests seeking communications and documents concerning her grievances, the settlement process, arbitration, extended-days and supplemental-contract issues, communications between the District or District counsel and the Union, and the District's search for and response to those records." (*Id.* at ¶ 100.) "Those requests followed District counsel David Pontius's accidental text to Plaintiff's counsel concerning 'Kolkowski,' Plaintiff's August 21, 2023 request for texts, emails, and other communications between Pontius or his firm, the District, and the Union directly related to Plaintiff or Plaintiff's counsel, and Plaintiff's August 22 and September 5, 2023 clarifications that the request sought Union/District communications and information sufficient to determine whether a reasonable search had been performed." (*Id.* at ¶ 101.)

"Defendants denied that responsive records existed and reaffirmed those denials even though responsive records existed." (*Id.* at ¶ 102.) "Plaintiff later identified at least one specific responsive record demonstrating that Defendants' denials were inaccurate." (*Id.* at ¶ 103.) "Defendants nevertheless failed to timely produce responsive records." (*Id.*)

"Plaintiff was required to initiate litigation in the Ohio Court of Claims to obtain records bearing directly on the grievance, arbitration, settlement, extended-days, supplemental contract, Union-communication, and search-process issues in this case." (*Id.* at ¶ 104.) "The later denial, omission, delayed production, and staged production of records concerned the records and search process outlined in the public-records filings, including communications about settlement consensus on Plaintiff's four arbitration matters, supplemental-contract waiver language, the May 27, 2021 job description as a settlement term, future supplemental days for guidance counselors, internal

forwarding of Plaintiff's August 24, 2023 arbitration/scheduling notice, August 22, 2023 search instructions and search results, July 2023 extended-days records, and later internal forwarding emails concerning Plaintiff's public-records challenge and extended-schedule issues." (*Id.* at ¶ 105.) "Records later produced in December 2025, February 2026, April 2026, and thereafter showed that responsive documents existed at the time of Defendants' earlier denials." (*Id.* at ¶ 106.)

"The District had repeated opportunities to produce or identify responsive and search-process records, including: (a) the August 24, 2023 no-records denial; (b) the September 19, 2023 reaffirmation of that denial; (c) Plaintiff's October 2, 2023 identification of at least one responsive record; (d) the December 5, 2025 production in PRR-003; (e) the February 12, 2026 purported or attempted supplemental transmission; and (f) the February 26, 2026 supplemental production and related Court of Claims filing." (*Id.* at ¶ 107.) "Despite those six opportunities, the District did not produce or identify records later showing that District officials had internally directed or performed searches for emails and text messages responsive to Plaintiff's August 21, 2023 public-records request." (*Id.* at ¶ 108.)

"PRR-010, served on March 16, 2026, specifically sought public records concerning how the District searched for records responsive to Plaintiff's August 21, 2023 request, including records identifying custodians searched, repositories searched, search terms used, email system searches, administrator or audit logs, and whether active, archived, deleted, retained deleted, or server-level email locations were searched." (*Id.* at ¶ 110.) "Only after PRR-010 did the District produce the Margie Jones[3] search records. Those records had not been produced in the original public-records case, had not been included in the District's initial 1-129 production, had not been produced after

[3] The FAC does not identify who Margie Jones is.

Plaintiff identified responsive records on October 2, 2023, and had not been included in the later December 2025 or February 2026 productions." (*Id.* at ¶ 111.)

"The Margie Jones records showed that, on August 22, 2023, Astorino forwarded District counsel David Pontius's search instruction to Margie Jones and Newsome and instructed them that they would need to search their emails and text messages, including texts or emails with Lisa Love/AATA." (*Id.* at ¶ 112.) "The Margie Jones records also showed that, later on August 22, 2023, Ms. Jones sent an email identifying emails that appeared when she searched for Plaintiff's name, including records relating to extended days, extended-day contracts, and other matters connected to Plaintiff's grievances and the August 21, 2023 request." (*Id.* at ¶ 113.)

"The late production of the Margie Jones search records is material because those records show that, within one day of Plaintiff's August 21, 2023 public-records request, District officials were internally directing searches of emails and text messages and identifying potentially responsive records, while the District later represented that no responsive records existed." (*Id.* at ¶ 114.) "The District's failure to produce those search-process records during the original public records litigation concealed material facts concerning what searches were actually performed, which custodians were asked to search, what records were located, and why responsive or potentially responsive records were not produced or identified in response to Plaintiff's original request." (*Id.* at ¶ 115.)

"The repeated failure to produce or identify responsive and search-process records was not a single missed production." (*Id.* at ¶ 116.) "The piecemeal appearance of those records in PRR-010 and other later productions, after repeated earlier opportunities to identify or produce them, supports a reasonable inference that Defendants failed to conduct or disclose a reasonable search process and concealed material facts concerning the grievance, arbitration, settlement, extended-days,

supplemental-contract, Union-communication, and due-process matters at issue in this case." (*Id.*)

**H. Kolkowski pursues grievances against Defendants**

"Beginning in or about 2020, Plaintiff pursued a series of grievances challenging the disputed administrative duties and the manner in which they were assigned, classified, and enforced; the secret job-description rewrite; the supplemental-contract waiver language; the 205 day/195-day extended-service compensation issue; and Defendants' failure to follow mandatory procedures." (*Id.* at ¶ 81.) "These grievances were stayed for extended periods and were never adjudicated on the merits through neutral arbitration." (*Id.* at ¶ 82.) "The District, its counsel, the Union, and AAA actively discussed scheduling a multi-day merits arbitration, including reserving as many as seven consecutive hearing days." (*Id.* at ¶ 83.)

**I. The Union settles Plaintiff's grievances in 2023**

"In or about September 2023, the union purported to resolve Plaintiff's grievances without Plaintiff's assent, without arbitration, and without any adjudication of the underlying facts or law." (*Id.* at ¶ 87.) "The September 2023 agreement was executed by representatives of the Union and, on behalf of the District, Superintendent Newsome, Treasurer Astorino, and the Board president. Plaintiff was not a signatory to the agreement and did not otherwise provide her assent." (*Id.* at ¶ 88.) "On or about September 8, 2023, Superintendent Newsome signed or approved a grievance disposition incorporating the settlement terms, including historical extended-day compensation, future extended days equal to those of the high-school counselors, acceptance of the revised job description, and use of the revised supplemental-contract form." (*Id.* at ¶ 89.)

"Plaintiff expressly rejected the purported resolution and did not accept any settlement funds." (*Id.* at ¶ 90.) "Defendants nevertheless treated the procedurally hollow union resolution as final and binding." (*Id.* at ¶ 91.) "The settlement further purported to ratify the May 27, 2021 School

Counselor 7–12 job description as properly adopted, thereby preserving and ratifying the challenged job structure while extinguishing the arbitration process that would have tested the legality of the waiver language, compensation structure, extra-duty assignments, job-description adoption, and procedural safeguards." (*Id.* at ¶ 94.) Kolkowski alleges that "Defendants used the purported settlement and dismissal of the arbitrations as final governmental action while continuing to enforce the challenged job structure, maintaining the disputed settlement-payment and Form W-2 tax-reporting treatment, and denying Plaintiff any neutral adjudication of the property, compensation, waiver, job-description, and procedural issues that had been placed before the grievance and arbitration process." (*Id.* at ¶ 99.)

**J. Kolkowski rejects Defendants' attempts to give her a settlement payment**

"In September 2023, a settlement check was delivered to Plaintiff's home. Plaintiff refused the check and her counsel returned it." (*Id.* at ¶ 119.) "Plaintiff and her counsel repeatedly notified Defendants, including Treasurer Astorino, that Plaintiff had rejected the settlement and never exercised dominion or control over the funds." (*Id.* at ¶ 120.)

"In January 2024, the District issued a Form W-2 reflecting income associated with the settlement agreement to which Plaintiff was not a signatory and whose proceeds she had rejected." (*Id.* at ¶ 121.) "On January 3 and January 4, 2024, Plaintiff, through counsel, provided written notice to Treasurer Astorino objecting to the issued Form W-2 and requesting correction." (*Id.* at ¶ 122.) "Treasurer Astorino responded in writing that no adjustment would be made to Plaintiff's 2023 Form W-2." (*Id.* at ¶ 123.) "Astorino did not dispute that Plaintiff had rejected and returned the settlement proceeds, did not offer any hearing or review, and did not identify any legal basis for refusing correction." (*Id.*)

"On February 15, 2024, Plaintiff, through counsel, again provided written notice to Treasurer Astorino, specifically referenced 26 U.S.C. § 7434, and requested issuance of a corrected Form W-2C." (*Id.* at ¶ 124.) "Despite these multiple written notices, Astorino and the District continued to maintain the Form W-2 reporting settlement income that Plaintiff alleges she never received, and no corrected Form W-2C was issued." (*Id.* at ¶ 125.) "The IRS later identified the discrepancy." (*Id.* at ¶ 126.) "Astorino nevertheless certified the Form W-2 as correct, and the Form W-2 remained uncorrected as of February 15, 2026." (*Id.*)

"On December 3, 2025, despite Plaintiff's prior rejection of the purported settlement and return of the original check, the District, through defense counsel, delivered another check for $6,960.06, representing the net amount of the disputed settlement proceeds." (*Id.* at ¶ 127.) "Plaintiff returned the replacement check on December 8, 2025 and again expressly rejected the purported settlement and any effort to characterize delivery of the funds as acceptance." (*Id.* at ¶ 128.)

"On or about December 10, 2025, the District initiated an electronic deposit of $6,960.06 into Plaintiff's bank account without Plaintiff's authorization. Plaintiff promptly disputed the deposit, and her bank removed and reversed the funds on December 12, 2025." (*Id.* at ¶ 129.) "The ACH transaction was returned under return code R23, identifying the credit entry as refused by the receiver." (*Id.* at ¶ 130.) "District personnel, including Treasurer Astorino, thereafter received notice that the electronic payment had been rejected." (*Id.*)

"The repeated replacement-check and electronic-deposit efforts occurred after Defendants had received repeated written notice that Plaintiff had not assented to the purported settlement, would not accept its proceeds, and objected to the imposition of governmental, employment, payroll, and tax consequences based upon it." (*Id.* at ¶ 131.) "Plaintiff never retained or exercised dominion or

control over those funds." (*Id.*)

**II. Procedural Background**

While Kolkowski was pursing her grievances against Defendants, sometime in 2020 or 2021, Plaintiff Kolkowski filed a lawsuit against the Ashtabula Area City School District and the Ashtabula Area Teachers Association and Ohio Education in the Ashtabula County Court of Common Pleas. *See Kolkowski v. Ashtabula Area Tchrs. Ass'n*, No. 2021-A-0033, 2022 Ohio App. LEXIS 2945 (Ohio App. 11th Dist. Sept. 6, 2022). In that case, Kolkowski alleged "that her constitutional rights, and her statutory rights under R.C. 4117.03(A)(5), had been violated when she was not allowed to retain private counsel to represent her in arbitration proceedings" *Id.* at *2. The trial court dismissed that case, which was affirmed by the Ohio Court of Appeals on September 6, 2022. *See id.*

On January 17, 2023, the Ohio Supreme Court declined to hear an appeal of the Ohio Court of Appeals' decision. *Kolkowski v. Ashtabula Area Teacher's Ass'n*, No. 2022-1299, 2023 Ohio LEXIS 58, at *1 (Jan. 17, 2023). On May 30, 2023, the United States Supreme Court denied Kolkowski's petition for writ of certiorari. *Kolkowski v. Ashtabula Area Teacher's Ass'n*, No. 22-1009, 2023 U.S. LEXIS 2271, at *1 (May 30, 2023).

Over two years later, on December 22, 2025, Kolkowski filed her Complaint in this Court against Defendants. (Doc. No. 1.) On January 23, 2026, Defendants filed their Motion to Dismiss. (Doc. No. 11.) Four days later, Kolkowski filed a Motion for Preliminary Injunction. (Doc. No. 12.)

On January 30, 2026, Kolkowski filed her Opposition to the Motion to Dismiss. (Doc No. 15.) On February 10, 2026, Defendants filed their Opposition to Kolkowski's Motion for Preliminary Injunction. (Doc. No. 16.) On February 13, 2026, Defendants filed their Reply in support of their Motion to Dismiss. (Doc No. 17.) On February 16, 2026, Kolkowski filed her Reply in support of

her Motion for Preliminary Injunction. (Doc. No. 19.)

On March 3, 2026, the Court denied Kolkowski's Motion for Preliminary Injunction. (Doc. No. 20.)

Then, on May 22, 2026, Plaintiff filed a "Notice of Recently Obtained Public Records Relevant to Accrual, Concealment, and Leave to Amend" (the "Notice"). (Doc. No. 21.) Therein, Kolkowski represents that she "submits this Notice to avoid any implication that the recently produced records were available earlier, that Plaintiff knowingly omitted facts now relevant to accrual or concealment, or that Plaintiff had complete knowledge in 2023 of the arbitration-process facts later revealed through public-records proceedings." (*Id.* at PageID #451.) She further represents that "Plaintiff therefore preserves her position that, if the Court concludes the current Complaint does not adequately plead the specific state-created right, the narrow scope of the prior Kolkowski litigation, the concealment facts, delayed discovery of public records, *Monell* knowledge or ratification, or the relationship between those facts and Plaintiff's claims, any dismissal should be without prejudice and with leave to amend under Fed. R. Civ. P. 15." (*Id.*)

On June 4, 2026, Defendants filed their Motion to Strike, requesting that the Court strike the Notice. (Doc. No. 22.) On June 18, 2026, Kolkowski filed her Opposition to the Motion to Strike, and filed a Motion for Leave to File First Amended Complaint. (Doc. Nos. 23, 24.) Attached to the Motion for Leave is her proposed FAC. Therein, Kolkowski alleges four claims for relief: (1) Procedural Due Process under 42 U.S.C. § 1983 (Count I), (2) First Amendment Retaliation under 42 U.S.C. § 1983 (Count II), (3) Municipal Liability under *Monell* (Count III), and (4) Fraudulent Information Return under 26 U.S.C. § 7434.

On July 1, 2026, Defendants filed their Opposition to the Motion for Leave. (Doc. No. 26.)

On July 6, 2026, Kolkowski filed her Reply in support of her Motion for Leave. (Doc. No. 27.)

Accordingly, the Motion to Dismiss, Motion to Strike and Motion for Leave are ripe for the Court's review.

**III. Standard of Review**

Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, if amending the complaint is 'futile,' the court need not grant a motion to amend. *See Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "An amendment is futile when, after including the proposed changes, the complaint still 'could not withstand a Rule 12(b)(6) motion to dismiss.'" *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 737 (6th Cir. 2022) (quoting *Rose v. Harford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000)). In other words, when a defendant opposes a plaintiff's motion to amend under Rule 15 as futile, the court looks to the "substance of the proposed amendment" to determine if the proposed amended complaint could withstand a Rule 12(b)(6) motion to dismiss. *See Beydoun*, 871 F.3d at 469 (quoting *Roskam Baking Co., Inc. v. Lanham Machinery Co., Inc.*, 288 F.3d 895, 906 (6th Cir. 2002)).

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–556 (2007)). For purposes of Rule 12(b)(6), "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the

motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted).

The measure of a Rule 12(b)(6) challenge — whether the Complaint raises a right to relief above the speculative level — "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n*., 528 F.3d 426, 430 (6th Cir. 2008) (quoting in part *Twombly,* 550 U.S. at 555–556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting in part *Erickson v. Pardus*, 551 U.S. 89 (2007)). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

**IV. Analysis**

**A. The Court grants the Motion for Leave**

In their Opposition to the Motion for Leave, Defendants assert that amendment would be futile because Kolkowski's claims are barred by the statute of limitations and res judicata. As explained below, the Court first finds that Kolkowski's claims are not barred by the statute of limitations. Then, as further explained below, the Court finds that Kolkowski's claims are also not barred by res judicata. And having rejected both of Defendants' arguments, the Court finds that amendment would not be futile.

**1. Kolkowski's FAC is not barred by the statute of limitations**

In her Motion, Kolkowski asserts that "[t]he proposed complaint expressly seeks § 1983 damages only for deprivations on or after December 22, 2023." (Doc. No. 23, PageID #464.) Kolkowski asserts that "the pleading identifies later actors, approximate dates, and new directions in 2024 through 2026, as well as the December 2025 replacement-check and ACH-payment efforts after Plaintiff's repeated rejection of the purported settlement." (*Id.*) Kolkowski argues that "[e]ach identified academic-cycle direction and each December 2025 payment attempt is pleaded as a new affirmative act and is independently timely; Plaintiff therefore does not rely on the continuing-violation doctrine to make those acts timely." (*Id.*) Kolkowski further asserts that "[e]arlier events are pleaded only for their limited evidentiary purposes, not as independent requests for time-barred damages." (*Id.*)

Defendants argue in their Opposition that "Plaintiff's attempt to amend the Complaint is a recognition that the statute of limitations expired prior to the filing of Plaintiff's original Complaint and attempts to add facts of alleged misconduct in 2024-2025 to cure this deficiency." (Doc. No. 26, PageID #550.) Defendants assert that "[i]n order to survive the statute of limitations defense, Plaintiff

would need to establish that the conduct identified in the Motion for Leave constitutes a continuing violation that would reset the statute of limitations beyond December 5, 2023." (*Id.*) Defendants argue that Kolkowski cannot meet the continuing-violation standard. (*Id.* at PageID #550–51.) They further argue that "[a]ll evidence on the record, including Plaintiff's own pleadings, demonstrates that Plaintiff, at a minimum, was aware of the alleged conduct when Plaintiff's charge was filed with SERB on December 5, 2023." (*Id.* at PageID #551.)

In her Reply, Kolkowski asserts that the continuing-violation doctrine does not apply to her claims. (Doc. No. 27, PageID #557–58.) Instead, she argues that "because the 2024-2026 implementation decisions and December 2025 payment acts are pleaded as discrete, individually actionable acts, each is analyzed on its own timeline rather than pulled back to an earlier act's accrual date." (*Id.* at PageID #558–59.)

Having considered the parties arguments, the Court finds, as explained below that Kolkowski's claims are not barred by the statute of limitations.

**i. Count I is not barred by the statute of limitations**

§ 1983 claims brought in Ohio are subject to a two-year statute of limitations. *See*, *e.g.*, *Beaver St. Invs., LLC v. Summit Cnty.*, 65 F.4th 822, 826 (6th Cir. 2023). Claims under § 1983 accrue "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Mahvi v. Geauga Cnty.*, No. 1:24-CV-1098, 2025 U.S. Dist. LEXIS 101682, at *6 (N.D. Ohio May 29, 2025) (quoting *Beaver*, 65 F.4th at 826). A procedural due process claim specifically accrues when (1) there is a "deprivation by state action of a protected interest in life, liberty, or property," and (2) "inadequate state process." *Bozzo v. Nanasy*, 159 F.4th 1111, 1116 (6th Cir. 2025) (citations omitted).

Here, Kolkowski alleges that "Defendants deprived Plaintiff of these interests through

procedural manipulation, reliance on a non-consensual union resolution, coercive payment practices, issuance and reaffirmation of allegedly false official records, failure to follow mandatory job-description review and acknowledgment procedures, and post-cutoff implementation of the challenged job structure through repeated administrative assignments." (Doc. No. 23-1, ¶ 148.)

Several of these alleged deprivations are clearly time barred. Kolkowski alleges that the "non-consensual union resolution" was executed in September 2023. (Doc. No 23-1, ¶¶ 88–92.) As to the "failure to follow mandatory job-description review and acknowledgment procedures" allegation, Kolkowski alleges that the job-description was approved without review/acknowledgment in May 2021. (*Id.* at ¶¶ 57, 62) And the "coercive payment" relates to a settlement check that was issued in September 2023. (*Id.* at ¶ 114.)[4] All of these events, as pled, occurred more than two years prior to the filing of Kolkowski's Complaint on December 22, 2025.

But the remaining alleged deprivations are not time barred. The allegations concerning "reaffirmation of allegedly false official records" relate to conduct that occurred in 2024, 2025 and 2026. (*Id.* at ¶¶ 121–131.) And the "post-cutoff implementation of the challenged job structure through repeated administrative assignments" also concern conduct that occurred in 2024 and 2025. (*Id.* at ¶¶ 6, 17, 34, 43–49, 134, 149.) The Court expresses no opinion as to whether these alleged "deprivations" state a plausible procedural due process claim on the merits,[5] but, as pled, they

---

[4] The Sixth Circuit has found that "[a] continuing violation can delay accrual of [a] plaintiff['s] cause[] of action." *Brown v. Louisville-Jefferson Cnty. Metro Gov't*, 135 F.4th 1022, 1034 (6th Cir. 2025) (citing *Eidson v. Tenn. Dep't of Child.'s Servs.*, 510 F.3d 631, 635 (6th Cir. 2007)). Defendants argue that Kolkowski cannot rely on this doctrine. The Court need not reach this issue because Kolkowski has specifically disclaimed that the continuing violation doctrine applies here. She asserts that she "does not rely on the continuing-violation doctrine to make [pre-December 2023] acts timely" and that "[e]arlier events are pleaded only for their limited evidentiary purposes, not as independent requests for time-barred damages." (Doc. No. 23, PageID #464.) The Court therefore will not analyze whether the pre-December 2023 conduct is timely under the continuing violation doctrine.

[5] Defendants have not argued that these allegations are insufficient on the merits.

certainly are not barred by the statute of limitations.

In sum, Count I is time barred except for the allegations concerning "reaffirmation of allegedly false official records" and the "post-cutoff implementation of the challenged job structure through repeated administrative assignments." For these reasons, the Court declines to dismiss Count I based upon the statute of limitations.

**ii. Count II is not barred by the statute of limitations**

The Court reaches a similar conclusion with regard to Kolkowski's First Amendment retaliation claim (Count II). As with her due process claim, Kolkowski's First Amendment retaliation claim is governed by a two-year statute of limitations. *Harrison v. City of Akron*, 43 F. App'x 903, 904 (6th Cir. 2002); *Kovach v. City of Lakewood*, No. 1:24-cv-01780-CEF, 2026 U.S. Dist. LEXIS 176388, at *10 (N.D. Ohio Aug. 7, 2025). Kolkowski alleges that she "engaged in protected speech and petitioning activity by seeking public records concerning governmental decision-making, challenging the accuracy of official payroll and tax records, objecting to the settlement and arbitration process, pursuing grievances and legal remedies, challenging former Superintendent Potts's explanation for the revised job description, objecting to the challenged duties and their effect on student counseling services, and refusing to accept the proposed settlement." (Doc No. 23-1, ¶ 157.) She further alleges that "Defendants took adverse actions against Plaintiff because of that protected activity, including post-cutoff directions continuing the challenged master-scheduling, testing-coordination, and Section 504 duties; issuance and reaffirmation of a false W-2; renewed replacement-check and unauthorized ACH-payment efforts after Plaintiff's repeated rejection; denial and delayed production of public records; failure to produce responsive and search-process records despite repeated opportunities; omission and delayed production of responsive records from the one

documented search source; and continued enforcement after Plaintiff objected and sought review." (*Id.* at ¶ 159.) Other than the alleged denial of the public records, Kolkowski alleges that these events occurred in 2024 and beyond.

The Court offers no opinion as to whether these allegations are sufficient to state a claim on the merits. But Count II, as pled, other than allegations concerning the alleged denial of the public records, is not time barred.

**iii. Count III is not barred by the statute of limitations**

Because *Monell* claims are brought under § 1983, the two-year statute of limitations applies to Count III. *Waseleski v. City of Brooklyn*, No. 1:23-cv-00548, 2024 U.S. Dist. LEXIS 74183, at *16–17 (N.D. Ohio Apr. 24, 2024). As with her other claims, viewing the allegations in the FAC in Kolkowski's favor, Kolkowski's *Monell* claim is premised, at least in part, on events occurring after December 22, 2023. First, Kolkowski alleges that the "challenged structure" was "maintained, implemented, and ratified by the District and its policymakers, including Treasurer Astorino and Superintendent Newsome." (Doc. No. 23-1, ¶ 165.) And as explained above, there are facts supporting that this allegation relates to conduct occurring after December 22, 2023. Second, Kolkowski alleges that the District "denied the existence of responsive records and delayed production of documents bearing directly on Plaintiff's grievance, arbitration, settlement, extended-days, supplemental-contract, Union communication, search-process, and due-process issues." (*Id.* at 168.) Again, as explained above, some of this conduct is alleged to have occurred after December 22, 2023.

As with Kolkowski's other 1983 claims, the Court offers no opinions on whether any of the post-December 2023 allegations are sufficient to maintain a *Monell* claim. The Court simply finds

that Kolkowski's *Monell* claim is not time-barred except to the extent that it is premised upon allegations concerning conduct occurring prior to December 22, 2023.

**iv. Count IV is not barred by the statute of limitations**

Defendants do not specifically challenge Kolkowski's "Fraudulent Information Return" claim in their Opposition. This makes sense. The statute of limitations for a claim brought under 26 U.S.C. § 7434 is the later of "(1) 6 years after the date of the filing of the fraudulent information return, or (2) 1 year after the date such fraudulent information return would have been discovered by exercise of reasonable care." 26 U.S.C. § 7434(c). And Kolkowski alleges that "[i]n January 2024, the District issued [the] Form W-2." (Doc. No 23-1, ¶ 121.) Accordingly, because this action was filed less than six years later in December 2025, Kolkowski's claim under 26 U.S.C. § 7434 is timely.

**2. The FAC is not barred by res judicata**

In her Motion, Kolkowski asserts that "[t]he prior litigation cannot bar claims based on conduct that had not occurred and could not have been litigated in that action." (Doc. No. 23, PageID #465.) Kolkowski argues that "[t]he alleged 2024-2026 implementation decisions, post-cutoff records conduct, January 2024 tax-reporting decisions, and December 2025 replacement-check and ACH conduct postdate the prior judgment." (*Id.*) Kolkowski further asserts that "[t]he amendment does not seek to relitigate the earlier right-to-counsel or arbitration-control claim; it uses that history to explain notice, context, and later reliance on the purported resolution." (*Id.*)

Defendants argue in their Opposition that "[i]n the Ashtabula County Litigation, Plaintiff argued she should be represented by counsel of her choosing to litigate the very same issues she seeks to litigate in the instant case." (Doc. No. 26, PageID #551.) They assert that "Plaintiff's Amended Complaint in the Ashtabula County Litigation alleged that '[i]n September of 2020, a dispute arose between Ms. Kolkowski and the District relating primarily to a supplemental contract and her

duties.'" (*Id.* at PageID #551–52.) According to Defendants, "[t]here is no different 'nucleus of facts' and the subject matter of the instant case is the same as the Ashtabula County Litigation that was dismissed with prejudice." (*Id.* at PageID #552.) Defendants claim that "Plaintiff's Motion for Leave does not allege any 'new' facts outside the scope of Plaintiff's Ashtabula County Litigation, and merely alleges that the conduct continued into 2024-2026, not that new conduct was discovered." (*Id.*)

Kolkowski argues in her Reply that the claims in the Ashtabula County case "did not ask the Common Pleas Court to adjudicate the merits of the supplemental-contract grievance, the permissible scope of Plaintiff's duties, the later job-description implementation decisions, or any tax-reporting or payment conduct." (Doc. No. 27, PageID #560.) She asserts that "[t]he proposed FAC expressly disclaims any grievance appeal, action to compel arbitration, or claim to control Union representation" and that the FAC "instead challenges later official acts and asserts different injuries and claims." (*Id.* at PageID #561.) Kolkowski further argues that "[t]he 2024-2026 implementation decisions, the January 2024 tax-reporting conduct, and the December 2025 replacement-check and ACH conduct all postdate the Ashtabula County Litigation judgment and could not have been litigated there." (*Id.* at PageID #562.)

Federal courts "give a state-court judgment or decree the same preclusive effect that it would have in the rendering state's courts." *Carroll v. City of Cleveland*, 522 F. App'x 299, 303 (6th Cir. 2013) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516, 519 (6th Cir. 2011); *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997)). To determine whether a state court judgment has preclusive effect in federal court, the Court looks "to the state's law to assess the preclusive effect it would attach to that

judgment." *Boggs*, 655 F.3d at 519 (quoting *ABS Indus., Inc. ex rel. ABS Litig. Trust v. Fifth Third Bank*, 333 F. App'x 994, 998 (6th Cir. 2009)).

"In Ohio, the doctrine of *res judicata* encompasses the two related concepts of claim preclusion and issue preclusion." *Sullen v. Bray*, No. 1:17 CV 1499, 2017 U.S. Dist. LEXIS 175207, at *10 (N.D. Ohio Oct. 23, 2017). Regarding claim preclusion, the Ohio Supreme Court has held that "a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.*, 653 N.E.2d 226, 227 (Ohio 1995). More specifically, "claim preclusion has four elements in Ohio: (1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action." *Hapgood v. City of Warren*, 127 F.3d 493, 493 (6th Cir. 1997). By contrast, issue preclusion "precludes the relitigation of an issue that has been actually and necessarily litigated and determined in a prior action." *Sullen*, 2017 U.S. Dist. LEXIS 175207 at *11.

As with Defendants' statute of limitations arguments, res judicata does not mandate dismissal of Plaintiff's claims.

**i. Count I is not barred by res judicata**

As explained above, the timely portions of Kolkowski's procedural due process concern "reaffirmation of allegedly false official records" and the "post-cutoff implementation of the challenged job structure through repeated administrative assignments." The allegations concerning "reaffirmation of allegedly false official records" are all alleged to have occurred after the conclusion

of the Ashtabula County litigation. Thus, Kolkowski's claims related to this conduct could not have been litigated in the Ashtabula County litigation. *Stanislaw v. Thetford Twp.*, No. 20-1660, 2021 U.S. App. LEXIS 21407, at *11 (6th Cir. July 19, 2021) ("These facts undergirding the equal protection claim did not arise until well after the complaint in *Stanislaw I* was filed; therefore these allegations were not and could not have been considered in the previous suit"); *Henry Conrts., Inc. v. Heidlage*, No. C-250089, 2025 Ohio App. LEXIS 4520, at *12 (Ohio App. 1st Dist. Dec. 31, 2025) ("Res judicata does not bar claims that did not exist and were not ripe at the time of the first action").

The allegations concerning "post-cutoff implementation of the challenged job structure through repeated administrative assignments" present a close call. Plaintiff certainly could have raised a claim concerning the job description rewrite in the Ashtabula County litigation because she was pursing such claims administratively. Challenging the implementation of the same job structure year after year could be reasonably construed as a challenge to the job description itself.

But at this stage, the Court must construe the allegations in the FAC in Kolkowski's favor. When doing so, Count I, as it relates to the "post-cutoff implementation of the challenged job structure," is not barred by res judicata. Kolkowski alleges, in reference to matters occurring after December 22, 2023, that "[t]he duties later directed to Plaintiff went materially beyond the limited participation, input, and assistance described in the revised job description and required her to perform building wide operational, coordination, and management functions." (Doc. No. 23-1, ¶ 36.) She also alleges "[e]ach new academic cycle required affirmative implementation decisions by District administrators, including new directions assigning, scheduling, coordinating, and enforcing administrative duties during the March-through-June and August cycles." (*Id.* at ¶ 7.) Construing these allegations in Kolkowski's favor, as the Court must do, Kolkowski is alleging that, after

December 22, 2023, Defendants' have assigned her duties beyond what the job description provides. Stated differently, Kolkowski is alleging that the "post-cutoff implementation" includes matters that did not occur prior to the conclusion of the Ashtabula county litigation. To be sure, discovery may reveal that res judicata may bar some or all of Count I. But as pled, the Court finds that Count I is not barred by res judicata.

**ii. Count II is not barred by res judicata**

The Court also finds that Kolkowski's retaliation claim is not barred by res judicata. The adverse actions alleged to form Kolkowski's retaliation claims are "post-cutoff directions continuing the challenged master-scheduling, testing-coordination, and Section 504 duties; issuance and reaffirmation of a false W-2; renewed replacement-check and unauthorized ACH-payment efforts after Plaintiff's repeated rejection; denial and delayed production of public records; failure to produce responsive and search-process records despite repeated opportunities; omission and delayed production of responsive records from the one documented search source; and continued enforcement after Plaintiff objected and sought review." (*Id.* at ¶ 159.) Construing these allegations in Kolkowski's favor, the Court finds that these actions are alleged to have occurred after the Ashtabula County litigation concluded. Nearly all of this conduct is alleged to have occurred after December 22, 2023. And it is plausible that Defendants expanded Kolakowski's job duties in 2024 and 2025 in retaliation for the alleged protected speech.

For these reasons, the Court finds that Count II is not barred by res judicata because Kolkowski could not have brought this claim in the first action and these issues were not actually litigated in the first action.

**iii. Count III is not barred by res judicata**

The Court next finds that Count III is not barred by res judicata. Kolkowski's *Monell* claim

is based on the following allegations:

> 165. The challenged structure originated during former Superintendent Dr. Mark Potts's administration, was approved by the Board, and was thereafter maintained, implemented, and ratified by the District and its policymakers, including Treasurer Astorino and Superintendent Newsome. The recurrence of the same assignments through multiple principals and administrators in successive post-cutoff academic cycles further reflects implementation of District policy or custom rather than an isolated act.
>
> 166. Policymakers knew the District was not following required job-description review and acknowledgment safeguards, yet permitted a custom or practice of disregarding those safeguards while enforcing job descriptions as binding obligations.
>
> 167. Policymakers failed to allow an actively scheduled arbitration process to reach a merits determination before continuing enforcement and later ratified the challenged structure through the purported settlement.
>
> 168. The Board and its policymakers maintained or ratified records practices that denied the existence of responsive records and delayed production of documents bearing directly on Plaintiff's grievance, arbitration, settlement, extended-days, supplemental-contract, Union communication, search-process, and due-process issues.

(Doc. No. 23-1, PageID #497.) As explained above, the allegations to the "challenge structure" could be construed as relating to conduct that occurred after the state case resolved. The alleged settlement of the arbitration also occurred after the state court case concluded. Further, the issues related to the public records are alleged to have occurred after the state case concluded.

For all these reasons, the Court finds that res judicata does not bar Kolkowski's *Monell* claim.

**iv. Count IV is not barred by res judicata**

Defendants do not argue that Count IV is barred by res judicata. Nor could they. The facts forming the basis of this claim did not arise until 2024 after the state court litigation concluded. Thus, Count IV is not barred by res judicata.

### 3. Having found that amendment would not be futile, the Court grants the Motion for Leave

Having found that amendment would not be futile, the Court grants Kolkowski leave to file the FAC. The FAC is deemed filed as the date of this opinion. Defendants shall file their answer no later than September 6, 2026. Because Plaintiff has omitted claims against Defendant Potts in the FAC, Potts is hereby dismissed with prejudice. *Metcalf v. Tri-State Auto Recovery, Inc.*, No. 23-87-DLB-CJS, 2023 U.S. Dist. LEXIS 202250, at *2–3 (E.D. Ky. Oct. 25, 2023) (recommending that Ford be dismissed when "Plaintiff filed an Amended Complaint maintaining her claims against TAR but omitting Ford as a defendant"), *adopted by* 2023 U.S. Dist. LEXIS 201535 (Nov. 9, 2023); *MMCPM Logistics, LLC v. Clarity Retail, LLC*, No. 2:21-00015(WOB-CJS), 2023 U.S. Dist. LEXIS 15972, at *7 (E.D. Ky. Jan. 31, 2023) ("MMCPM Logistics did not name First Financial Bank or Ian Jordan as parties in its amended complaint . . . [s]o those two defendants will be dismissed"); *Church Joint Venture v. Blasingame*, No. 12-2999, 2013 U.S. Dist. LEXIS 197687, at *5 (W.D. Tenn. Sept. 27, 2013) ("Church seeks to amend its complaint to add facts and to dismiss one Defendant and add another. . . . Church's motion to amend is GRANTED. Defendant ADGC is DISMISSED. ADSI is added as a Defendant").

### B. Defendants' Motion to Dismiss is denied as moot

"The general rule is that filing an amended complaint moots pending motions to dismiss." *Crawford v. Tilley*, 15 F.4th 752, 759 (6th Cir. 2021). "Alternatively, district courts may exercise their discretion and apply a pending motion to dismiss to portions of an amended complaint that are 'substantially identical to the original complaint.'" *Id.* (quoting *Mandali v. Clark*, No. 2:13-cv-1210, 2014 U.S. Dist. LEXIS 143850, at *4 (S.D. Ohio Oct. 9, 2014)). Because the Court finds that the FAC states a claim, the Court denies the Motion to Dismiss as moot.

**C. Defendants' Motion to Strike is denied**

Defendants argue in their Motion to Strike that the Court should strike the Notice under Fed. R. Civ. P. 12(f) because is "is filled with unsupported and unsubstantiated references to 'recently produced records' without satisfying any burden of referencing specific records relevant to Plaintiff's claim, or providing any affidavit as to the purported effect these records allegedly serve to further Plaintiff's claims in this matter." (Doc. No. 22, PageID #455–56.) According to Defendants, the Notice is "'immaterial and impertinent' under Fed.R.Civ.P.12(f) because it seeks to add vague allegations of improper conduct to the record without asserting the allegations in an actual pleading to which the Defendants can respond." (*Id.* at PageID #456.) In her Opposition, Kolkowski makes several arguments, only one of which is relevant to the Court's decision today. She argues that "[b]ecause the Notice is not a pleading, Rule 12(f) does not authorize striking it." (Doc. No. 24, PageID #538.)

Kolkowski is correct. Defendants rely solely on Rule 12(f) as a basis to strike the Notice. Rule 12(f), however, permits district court to strike matters from *pleadings* as defined in Rule 7(a). *Fox. v. Mich. State Police Dep't*, 173 F. App'x 372, 375 (6th Cir. 2006); Fed. R. Civ. P. 7(a) ("Only these pleadings are allowed: (1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer"). Because the Notice is not a pleading as defined in Rule 7(a), the Court denies the Motion to Strike. *Lars St. John v. Cuyahoga Metro. Hous. Auth.*, No. 25-3522, 2026 U.S. App. LEXIS 20213, at *27 (6th Cir. July 9, 2026) ("The district court did not abuse its discretion in denying St. John's motion to strike. First, the statement St. John sought to strike appeared in a brief and not a pleading as defined

in Federal Rule of Civil Procedure 7(a)"); *McFarlin v. Word Enters., LLC*, No. 16-cv-12536, 2019 U.S. Dist. LEXIS 202948, at *7 (E.D. Mich. Nov. 22, 2019) ("Rule 12(f) does not apply to a notice because it is not a 'pleading' under Rule 7(a); it therefore provides no mechanism for the Court to strike Defendants' Notices in the instant matter"). Because the Notice is not a pleading, the Court denies the Motion to Strike.

## V. Conclusion

For the reasons stated herein, the Motion for Leave (Doc. No. 23) is GRANTED. The First Amended Complaint (the "FAC") (Doc. No. 23-1) is deemed filed as the date of this opinion. Defendants shall file their answer no later than September 9, 2026. Defendant Potts is hereby dismissed with prejudice. The Motion to Dismiss (Doc. No. 11) is DENIED as moot. The Motion to Strike (Doc. No. 22) is DENIED.

**IT IS SO ORDERED.**

*s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE

Date: August 26, 2026